**Shefts v. Security Title & Guaranty Co. of New York**

*John P. Diefenderfer,* for plaintiffs.
*Robert F. Ruehl,* for defendants.

MONROE, J., March 30, 1972.—Plaintiffs have instituted this action in assumpsit to recover compensation

from defendant, Security Title and Guaranty Company of New York, which contracted to insure the title to plaintiffs' real estate, and its alleged agent, Presidential, Inc., for moneys paid by plaintiffs in satisfaction of an alleged assessment by Middletown Township, Bucks County, Municipal Authority on real estate owned by plaintiffs. Defendants have demurred to the amended complaint[1] on the ground that it does not show that there existed a lien or encumbrance upon plaintiffs' property on the date of settlement at which plaintiff had purchased the property. "In passing upon the validity of . . . preliminary objections [in the nature of a demurrer] certain well established principles are applicable: (1) preliminary objections admit as true only such facts as are well pleaded, material, and relevant and only such inferences as are reasonably deducible from such facts: (cases) (2) preliminary objections admit neither conclusions of law nor inferences unwarranted by the admitted facts nor argumentative allegations nor expressions of opinion: (cases) (3) if to sustain the preliminary objections of a defendant will result in a denial of a plaintiff's claim or a dismissal of plaintiff's suit, such preliminary objections will be sustained only in those cases which are clear and free from any doubt: (cases):" Hyam v. Upper Montgomery Jt. Auth., 399 Pa. 446, 448-49 (1960).

---

[1] Plaintiffs had filed an original complaint to which defendants had demurred. After informal discussions and exchange of correspondence between counsel and the court, it was agreed between counsel that plaintiff could file an amended complaint. Filed of record in the prothonotary's office, stamped as having been received therein on October 29, 1971, but no docket entry having been made thereof, is a pleading entitled "Preliminary Objection of Defendant to Plaintiffs' Complaint" which all parties have treated as a demurrer to the amended complaint filed September 10, 1971.

With the foregoing principles in mind, we turn to a consideration of the amended complaint.

It alleges that on July 20, 1968, plaintiffs entered into a written agreement of sale with William Trexler and Jane D. Trexler, his wife, whereby the premises situate at 325 North Buckthorn Avenue, Langhorne, Pa., were to be conveyed free and clear of all liens and encumbrances. By binder dated September 1, 1968, defendant, Presidential, Inc., on behalf of defendant, Security Title and Guaranty Company of New York, undertook to insure the title of the aforesaid premises, issuance of the policy to be contingent upon the conveyance aforesaid being completed and recorded. The binder provided that the "premises being insured hereunder shall be subject to the following and will be excepted in the policy unless removed thereon . . . (4) Proof that no sewers have been installed or ordered to be installed abutting or in front of or upon premises described herein prior to completion of this transaction or receipts for the cost of the same to be produced or any exception will be certified in Schedule B of title insurance policy relieving company from liability for any loss arising by reason of a claim or claims for such sewer installation and connection therewith" and the binder also excepted "Mechanics Liens and Municipal Claims—None—Liability for any unfiled mechanics liens and municipal claims for any work done or ordered to be done."

Settlement on the aforesaid agreement of sale was held on September 27, 1968, at which time the exceptions hereinabove quoted were removed by defendants and plaintiffs paid to defendants the sum of $224.50 in consideration of the issuance of a policy of title insurance by defendants to them.

At the settlement, a deed transferring title to the real estate was delivered to plaintiffs. The amended com-

plaint then alleges that the policy of title insurance was not issued by the Security Title and Guaranty Company of New York to the plaintiffs "but the defendants [sic] have upon litigation been furnished a stipulated true and correct copy of the language of the same, a true and correct copy of which is incorporated herein as Exhibit 'G.' " The pertinent language in the exhibit is "Security Title and Guaranty Company . . . for a valuable consideration . . . hereby insures . . . the insured . . . against loss or damage not exceeding ——— dollars . . . which the insured shall sustain by reason of: any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule 'A,' existing at the date hereof, not shown or referred to in Schedule 'B' or excluded from coverage under Schedule 'B' or in the Conditions and Stipulations." Schedule "B" is not attached to the amended complaint nor is the wording thereof set forth in the exhibit. It appears to be taken for granted by the parties that the contents of Schedule "B," if there is such a schedule, have no bearing upon the present issues. The "Conditions and Stipulations" affixed to the exhibit, insofar as pertinent, provide, in section Two thereof: "This policy does not insure against loss or damage by reason of the following: . . . (d) Defects, liens, encumbrances, adverse claims against the title as insured . . . (4) attaching or created subsequent to the date hereof."

The amended complaint alleges the following: By ordinance 67-25 adopted October 25, 1967, by the Township of Middletown (a copy of which is attached to the amended complaint) the said township was committed to the development of sewers and the ordinance required property owners having dwellings within 150 feet of sewers to connect therewith within 60 days after notice of the completion of the public

sewers and that the dwelling on the land purchased by plaintiffs is within 150 feet of public sewers installed in the beds of the streets in front of the property. On March 3, 1968, and April 3, 1968, bids for the construction of sewers were duly advertised and the bids were received April 9, 1968, by the Middletown Township, Bucks County, Municipal Authority and on September 23, 1968, the construction contract was awarded "conditioned upon bond settlement." In support of this latter allegation, there was attached to the amended complaint as exhibit B what appears to be a copy of the minutes of a regular meeting of the Middletown Township, Bucks County, Municipal Authority dated September 23, 1968, setting forth the adoption of two resolutions, the first entitled "APPROVING AND ADOPTING A REPORT IN RESPECT TO CERTAIN SANITARY SEWERAGE COLLECTION FACILITIES PROPOSED TO BE CONSTRUCTED BY THE AUTHORITY WITHIN THE PORTIONS OF MIDDLETOWN TWP. HEREIN DESIGNATED; AUTHORIZING AND DIRECTING SUBMISSION OF THE PLAN OF CONSTRUCTION AND ESTIMATED COSTS THEREOF IN RESPECT TO SUCH FACILITIES TO THE BOARD OF SUPERVISORS OF MIDDLETOWN TWP. FOR APPROVAL BY THE TOWNSHIP PURSUANT TO SECTION 4 B (S) OF MUNICIPALITY ACT OF 1945 AS A PRECONDITION TO THE LEVYING OF FOOT FRONT ASSESSMENTS BY THE AUTHORITY: AND REPEALING INCONSISTENT RESOLUTIONS. (See attached)"; the second resolution being entitled "REJECTING ALTERNATE BIDS RECEIVED FOR THE CONSTRUCTION OF CERTAIN FACILITIES TO BE CONSTRUCTED WITHIN MIDDLETOWN TWP.; DETERMINING THE LOWEST RESPONSIBLE BIDDER AND THE AMOUNT OF THE LOWEST BASE BID; AUTHORIZING NOTIFICATION TO

SUCH BIDDER OF INTENT TO AWARD THE CONSTRUCTION CONTRACT TO IT AND DIRECTING SUBMISSION OF PERFORMANCE AND PAYMENT BONDS; AWARDING THE CONSTRUCTION CONTRACT AND AUTHORIZING AND DIRECTING ITS EXECUTION AND DELIVERY BUT PROVIDING THAT SUCH AWARD AND AUTHORIZATION SHALL TAKE EFFECT ONLY UPON SATISFACTION OF DESIGNATED CONDITIONS AND RESERVING THE RIGHT TO AMEND, MODIFY OR REPEAL THE SAME; AND REPEALING INCONSISTENT RESOLUTIONS. (See attached)" The texts of the resolutions referred to are not set forth in the amended complaint or attached as exhibits thereto.

The amended complaint further recites that on October 2, 1968, the Township of Middletown adopted an ordinance, no. 68-16, committing the township to leasing sewers about to be constructed in front of plaintiffs' property. A copy of the ordinance was attached to the amended complaint.

It also alleges that the bond approval condition of the construction contract was cured and on October 4, 1968, the Township of Middletown enacted an ordinance, no. 68-17, imposing sewer connection fees and sewer rents upon the subject property. A copy of this ordinance was attached as an exhibit to the pleading.

The amended complaint also alleges that construction of the sewers in the section in which plaintiffs' property is situated began on November 11, 1968, and the date of completion of the sewers pursuant to the certificate of the engineer was June 10, 1969. It alleges that "plaintiffs' premises were assessed in the sum of $1,280 which sum was paid by the plaintiff on September 12, 1969." In support of this last allegation, plaintiffs attached as exhibits "H" and "I" copies of "Sanitary Sewer Assessment Bill" issued by Middletown Town-

ship, Bucks County, Municipal Authority dated July 14, 1969, addressed to plaintiffs stating "Take Notice that Middletown Township, Bucks County, Municipal Authority has assessed your property at $8.00 per front foot where it abuts upon the sanitary sewer as follows:" followed by a statement of 160 total assessable feet for a total amount of $1,280.

Before getting to the heart of defendants' demurrer, there is an observation which we make. It is this: Plaintiffs' claim apparently rests upon a policy of title insurance issued to plaintiffs by defendants. Plaintiffs' brief states that this is the basis of the suit and defendants seem to recognize that that is so. Nevertheless, the amended complaint alleges that the policy of insurance was not issued and it does not attach a copy of the policy of insurance. Instead, the amended complaint alleges, as we have hereinabove set forth, that a true and correct copy of the language of the policy is attached as exhibit "G." The exhibit is a printed form of "Policy of Title Insurance, Security Title & Guaranty Company" containing the printed matter which we have hereinabove set forth, but, mirabile dictu, what appears to be a photostatic copy of a policy of title insurance of the Security Title and Guaranty Company dated October 3, 1968, in the sum of $33,000 issued to "Edward Shefts and Sue R. Shefts, his wife, insuring title to premises 325 N. Buckthorn Ave. Middletown Township, Bucks County, Pennsylvania" is attached to plaintiffs' brief. If this is a true and correct copy of a policy of title insurance issued to plaintiffs which is the basis of plaintiffs' suit, we suggest that it would be appropriate to attach it to a second amended complaint (see Pennsylvania Rule of Civil Procedure 1019(h)) if they file such a pleading, which they shall be permitted to do if they can allege a good cause of action. Since the parties treat the action as one based

upon a policy of title insurance, we shall so treat it and insofar as the provisions of the policy are material to our determination of the demurrer, we shall be guided by those set forth in the exhibit to the complaint rather than in the exhibit to the brief filed by plaintiffs.

Defendants' position is that if a sewer construction lien on plaintiffs' property in favor of the Middletown Township, Bucks County, Municipal Authority did not exist as of the time of settlement, no liability attaches to defendants. Defendants' demurrer is directed to the failure of plaintiffs' amended complaint to allege the existence of such a lien at the time of settlement. We agree that if such a lien did not exist as of the date of settlement or the date of the policy of title insurance, whichever was later in date, there would be no liability upon defendants and if the amended complaint does not adequately allege the existence of such a lien prior to settlement or the date of the policy, the demurrer must be sustained. But we do not agree with defendants' theories as to when such a lien attaches, as shall later be seen.

In this case, the sewer construction lien is alleged to exist in favor of the Middletown Township, Bucks County, Municipal Authority by reason of a front-foot assessment against plaintiffs' property. To determine whether the existence of such a lien, and the date of its inception, is pleaded in the amended complaint, consideration must be given to the case and statutory law on the subject. We take judicial notice[2] that the Middletown Township, Bucks County, Municipal Authority is an authority created by the Township of Middletown, Bucks County, under the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, et seq. The assessment bill attached as exhibits "H"

---

[2] Plaintiffs did not so plead.

and "I" to the amended complaint state that the assessment was according to the front-foot rule. The Municipality Authorities Act, sec. 4B, as amended 53 PS §306B, pertinently provides: "Every authority is hereby granted . . . the following rights and powers: . . .

"(s) To charge the cost of construction of any sewer or water main constructed by the Authority against the properties benefited, improved or accommodated thereby according to the foot front rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties. Such charges may be assessed and collected and such liens may be enforced in the manner provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which said Authority is located: Provided, That no such charge shall be assessed unless prior to construction of such sewer or water main the Authority shall have submitted the plan of construction and estimated cost to the municipality in which such project is to be undertaken, and the municipality shall have approved such plan and estimated costs: And, provided further, That there shall not be charged against the properties benefited, improved or accommodated thereby an aggregate amount in excess of the estimated cost as approved by the municipality."

It is to be noted that by the above legislation, power to assess, collect and enforce liens for charges for construction of sewers is vested in the authority *"in the manner provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which the authority is located."* The authority in this case is located in the Township of Middletown, which is a township of the second class, the pertinent law of which provides: "The charge for any such sewer or drain construction in any township

shall be assessed upon the properties accommodated or benefitted, in either of the following methods: (a) By an assessment, pursuant to a resolution or ordinance of the board of supervisors, of each lot or piece of land in proportion to its frontage abutting on the sewer or drain, . . .": The Second Class Township Code of May 1, 1933, sec. 1509, as amended 53 PS §66509.

By virtue of the foregoing legislation, a validly adopted resolution of the board of the authority is required for the levying of a sewer construction cost assessment. See Simon Appeal, 408 Pa. 464, at 471, where it is said: "The only reference (in sub-section (s) of the Municipality Authorities Act of 1945, above set out) to the code governing the conduct of the municipality is to establish the procedure for establishing and collecting the assessments" (parentheses supplied), and at page 472 where it is said: "The phrase 'in the manner' appearing in sub-section (s) merely indicates that procedural rules set forth in the code of the local municipality are to be followed . . .". See also Whitemarsh Township Authority v. Elwert, 413 Pa. 329 (1964), where, in considering the power vested in authorities to levy sewer construction cost assessments, the court, at pages 336-37, said: "The only procedural rule that is of relevance in The Second Class Township Code of May 1, 1933, P. L. 103, §1509, and amendments, 53 PS §66509, is the direction in subparagraph (a) that foot front assessments shall be made pursuant to a resolution or ordinance of the board of supervisors; in other words, under the Authorities Act, by a resolution of the Authority." See also Evans v. W. Norriton Twp. Municipal Authority, 370 Pa. 150; Upper Moreland-Hatboro Joint Sewer Authority v. Wilson, 18 D. & C. 2d 171.

It is clear from the foregoing that absent a valid reso-

lution of the authority levying a front foot assessment, an assessment does not exist and a lien does not come into being. See also Titusville Street, 3 Dist. Rep. 752 (1894).

It is also to be noted that subsection (s) of section 4B of the Municipality Authorities Act provides "That no such (sewer construction cost) charge shall be assessed unless prior to construction of such sewer . . . the Authority shall have submitted the plan of construction and estimated cost to the municipality in which such project is to be undertaken, and the municipality shall have approved such plan and estimated cost:"

In considering the construction to be placed upon the quoted provision, the Supreme Court, in Evans v. W. Norriton Twp. Municipal Authority, supra, said, page 158:

"Reading the act and particularly the entire section in the light of these principles, we construe the second or further proviso to apply to the entire section 4B (s), with the result that the plan of construction of a lateral sewer and the estimated cost thereof must be submitted to and approved by the commissioners (or other elected public officials having the authority to levy taxes and perform municipal functions) and the actual cost of construction cannot exceed the estimated cost as so approved, (a) *in order for the charges or assessments to be valid,* and (b) *in order for them to have the force and effect of a lien."* (Emphasis in original.)

And, at page 161, it stated: "In the light of the foregoing principles, we hold . . . (2) that the plan for a sewer and the cost of construction and the liening thereof determined initially by an Authority is valid only if and when approved by the elected commissioners; . . ." See also West Grove Borough Authority v. Abernethy, 35 D. & C. 2d 41 (1964), and Whitemarsh Township Authority v. Elwert, supra, page 334, where

it is said; "If the Authority chooses the 'foot front method', the charges to be made by the Authority are determined by 'the plan of construction and estimated cost' that are approved by the municipality."

It is quite clear to us in consideration of the foregoing that in order for there to have been an assessment of plaintiffs' property it was required that prior to the construction of the sewer the Middletown Township, Bucks County, Municipal Authority was required to have submitted the plan of construction and the estimated cost thereof to the Township of Middletown which must have approved of such plan and estimated cost, and the authority must have adopted a resolution levying the assessment. The cases appear to hold that the township's approval must precede the adoption of the assessment resolution by the authority, and this seems to be the intent of the act in its wording that "no such charge shall be assessed" unless the township shall have approved the plan and estimated cost. However, we need not now determine in what sequence the events must take place as sufficient factual matters are not before us to determine whether such a question is involved. Nevertheless, defendants' demurrer must be sustained because we have found no allegation whatsoever in the amended complaint and exhibits thereto, all of which we have carefully studied, showing the submission to and approval by the municipality of the sewer construction plans and estimated cost or the adoption by the authority of a resolution levying assessments which would be applicable to plaintiffs' property. The averment in the amended complaint "25. The plaintiffs' premises were assessed in the sum of $1,280 . . ." is a legal conclusion and of no effect, being unsupported by affirmative averments as to how and when the assessment was effected.

Defendants' position is that the assessability of prop-

erty for sewer construction costs is effective as of the date of the completion of the work, and since the complaint specifically alleges that "24. The date of completion of the sewers pursuant to the certificate of the engineer was June 10, 1969," being almost nine months after the date of settlement at which plaintiffs acquired title to the real estate, the complaint does not allege a good cause of action. Defendants rely on the Municipal Claims Act of May 16, 1923, P. L. 207, sec. 9, which provides, in pertinent part, 53 PS §7143: "In case the real estate benefited by the improvement is sold before the municipal claim is filed, the date of completion (of the sewer construction work) in said certificate shall determine the liability for the payment of the claim as between buyer and seller, unless otherwise agreed upon . . ." (Parentheses supplied.) and upon the decisions in Savarese v. Davis, 36 D. & C. 2d 63 (1964) and Moore v. Beattie, 5 D. & C. 2d 739.

In Moore v. Beattie, in an action by the purchaser of real estate against the seller who had agreed to convey the property free and clear of encumbrances and liens, it was held that the property was assessable as of the date of completion of the work, that the certificate of the engineer was conclusive as to the date of completion and since that occurred after settlement had been had on the agreement of sale, plaintiff had no cause of action. Savarese v. Davis was also an action by the purchasers of real estate against the sellers who had agreed to convey clear of encumbrances. In this case, the court held, page 68: "If no claim was filed prior to the sale, then the date of completion appearing in the certificate of the appropriate engineer or officer is determinative of liability for the payment of the claim in question."

Defendant also relies on Allegheny City v. King, 18 Pa. Superior Ct. 182, July 25, 1901, decided before the

effective date of the Municipal Claims Act of June 4, 1901, P. L. 364, as to the liens under consideration in said decision, also holding that the assessability of property for sewers must be determined as of the time when the work was done. In view of the authorities upon which we have relied, we do not consider those relied upon by defendants to be determinative of the date upon which the claim of the Middletown Township, Bucks County, Municipal Authority would have become effective as an encumbrance upon plaintiffs' property.

Plaintiffs' position, insofar as we are able to understand it, is that adoption by the Township of Middletown of Ordinance No. 67-25 on October 25, 1967, which committed the township to the development of sewers and required property owners having dwellings within 150 feet of the sewers to connect with the same, created an encumbrance on the property in question as of the date of the ordinance, which was prior to the date of settlement at which plaintiffs acquired title to their real estate. They cite as authority for their position Kraft v. Hankin, 11 D. & C. 2d 36 (1957); Shoub et ux. v. Dunbar, 256 Pa. 311 (1917); Ritter v. Hill et al., 282 Pa. 115 (1925); Fifth Mutual Bldg. Society of Manayunk's Appeal, 317 Pa. 161 (1935). The trouble with these authorities is that they are not in point. In Kraft it was held that an ordinance of the City of York which required that all owners of improved property in the city must connect with the sanitary sewage system of the city and upon failure so to do after notice, the same may be done by the city and costs thereof, plus a penalty, may be levied and collected from the owner, which amount shall be a lien upon the premises from the time of the completion of the work, created an encumbrance from the effective date of the ordinance even though the ordinance had not been complied with by the prop-

erty owners and the city had not done the work as provided for in the ordinance. It was not concerned with front foot assessment by an authority for sewer construction costs. In Shoup, it was held that an ordinance of the City of Pittsburgh vacating a certain street in the city created an encumbrance upon abutting properties as of the date of enactment for assessments for benefits arising from the vacation even though such benefits had not been ascertained. Plaintiffs apparently failed to see the distinction between municipal ordinances requiring abutting property owners to connect with existing sewers and decreeing the vacation of streets and the action of an authority in seeking to assess benefiting properties for costs of construction of a sewer by the authority. The sovereign in the case before us is the authority and not the Township of Middletown. Furthermore, plaintiffs have given no heed to the provisions of the Municipality Authorities Act of 1945 and the Second Class Township Code or the decisions in Simons Appeal, Whitemarsh Township Authority and Evans, all supra. Ritter v. Hill held that the plotting of a proposed street and the placing of it upon the city plan constitutes an encumbrance upon the real estate wherein the proposed street is to be opened. Fifth Mutual Bldg. Society of Manayunk's Appeal held a title insurance company to be liable on a policy insuring against existing liens, upon the showing of an existing judgment which was not excepted from the provisions of the policy.

## ORDER

And now, to wit, March 30, 1972, defendants' demurrer is sustained but leave is granted plaintiffs to file a second amended complaint within 20 days from the date hereof if they are able to allege a good cause of action therein.